J-S69002-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSEPH MAYS | |
| Appellant | No. 955 EDA 2013 |

Appeal from the Judgment of Sentence March 11, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010618-2011

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and STABILE, J.

MEMORANDUM BY GANTMAN, P.J.:           **FILED DECEMBER 23, 2014**

Appellant, Joseph Mays, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial conviction for resisting arrest or other lawful enforcement.[1] We affirm.

The relevant facts and procedural history of this case are as follows. During the early morning hours of June 17, 2011, Philadelphia Police Officers Patrick Biles and Christopher Rommel received a police radio report of a shooting at Marlowe and Dyre Streets in Northeast Philadelphia. Shortly thereafter, the officers received another report from Officer Christopher Lewis, describing a silver Chevrolet SUV that was possibly involved in the shooting. Officer Lewis indicated the SUV was traveling northbound on the

---

[1] 18 Pa.C.S.A. § 5104.

4900 block of Frankford Avenue. Officer Lewis also stated, "Use caution. They may be armed." (N.T. Trial, 3/6/13, at 68). At the time of the call, Officers Biles and Rommel were traveling westbound on Pratt Street, headed toward the intersection with Frankford Avenue.

At that point, Officers Biles and Rommel observed the SUV execute a right-turn into the eastbound lane of Pratt Street. The officers activated the lights and sirens on their vehicle and maneuvered into the eastbound lane in an attempt to stop the SUV. The SUV avoided a collision with the officers' vehicle by jumping the curb, driving on the sidewalk, and cutting through a shopping center parking lot. The officers pursued the SUV for several blocks. The back window of the SUV was tinted, and the officer could not determine the number of occupants in the vehicle. Additionally, the officers heard gunshots during the pursuit, but they could not determine whether the shots had originated from the SUV.

Ultimately, the SUV stopped in an alley. The officers exited their patrol car, drew their firearms, and approached the SUV. Officer Rommel approached the driver's side and Officer Biles approached the passenger side. The officers yelled at the occupants of the SUV, "Get your hands up. Let me see your hands." (*Id.* at 44). Specifically, Officer Biles was concerned for his safety, as he was unsure whether the occupants were armed. Officer Biles looked into the SUV and saw Appellant sitting in the passenger seat. Officer Biles commanded Appellant to exit the SUV, but

- 2 -

Appellant did not comply. Officer Biles opened the door, grabbed Appellant's shirt, and tried to remove Appellant from the vehicle. Appellant reached out and clutched Officer Biles' wrist. Officer Biles holstered his firearm, struggled with Appellant, and took Appellant to the ground. While on the ground, Appellant flailed his arms. Ultimately, Officer Biles applied a "control hold" to subdue Appellant and place him in handcuffs. (*Id.* at 104).

Following trial, a jury convicted Appellant of resisting arrest or other lawful enforcement. On March 11, 2013, the court sentenced Appellant to one (1) to two (2) years' imprisonment. On March 13, 2013, Appellant timely filed a post-sentence motion. In it, Appellant argued the court imposed an aggravated range sentence without considering mitigating factors.[2] Specifically, Appellant alleged he "had no prior record involving crimes of violence, as well as strong community and family support." (Post-Sentence Motion, filed 3/13/13, at 4-5). The court denied Appellant's post-sentence motion on March 19, 2013.

Appellant timely filed a notice of appeal on March 26, 2013. On March 20, 2014, this Court dismissed the appeal due to Appellant's failure to file a brief. Appellant filed an application to reinstate the appeal on March 25, 2014, which this Court granted on March 31, 2014. On May 25, 2014,

---

[2] With a prior record score of five (5) and an offense gravity score of two (2), the standard range for Appellant's resisting arrest or other law enforcement conviction was one (1) to nine (9) months, plus or minus three (3) months for aggravating or mitigating circumstances.

Appellant filed a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b).

Appellant now raises two issues for our review:

WAS NOT THE EVIDENCE INSUFFICIENT TO ESTABLISH APPELLANT'S GUILT AS A MATTER OF LAW, TO THE CHARGE OF RESISTING ARREST?

WAS NOT THE SENTENCE IMPOSED EXCESSIVE AND CONSTITUTE[S] AN ABUSE OF DISCRETION, WHERE THE COURT FAILED TO LIST THE REASONS FOR AN AGGRAVATED SENTENCE AND THE COURT SEEMINGLY INTENDED TO PUNISH [APPELLANT] FOR EXERCISING HIS RIGHT TO A JURY TRIAL?

(Appellant's Brief at 4).

In his first issue, Appellant contends the Commonwealth's evidence demonstrated he was merely a passenger in a vehicle driven by his co-defendant. Appellant asserts the Commonwealth did not produce evidence "to suggest that Appellant played any role in the…co-defendant's actions in evading and fleeing from police on June 17, 2011." (Appellant's Brief at 10). Absent more, Appellant argues the officers did not have probable cause to arrest him. On this basis, Appellant concludes the Commonwealth presented insufficient evidence to support his conviction for resisting arrest or other law enforcement. We disagree.

When examining a challenge to the sufficiency of the evidence, our standard of review is:

[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every

element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (quoting ***Commonwealth v. Jones***, 874 A.2d 108, 120-21 (Pa.Super. 2005)).

Section 5104 of the Crimes Code defines the offense of resisting arrest or other law enforcement as follows:

### § 5104.  Resisting arrest or other law enforcement

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest **or discharging any other duty**, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S.A. § 5104 (emphasis added).

Instantly, the trial court evaluated Appellant's sufficiency challenge as follows:

- 5 -

At the time Police Officer Biles approached Appellant on the passenger side of the vehicle, he was justified in initiating a safety frisk for weapons, a duty as a law enforcement officer. While on routine patrol, Officer Biles received a radio call at approximately 2:00 a.m. regarding gunshots. He subsequently received information leading him to encounter the target vehicle and possible suspects. During the ensuing vehicle chase, Officer Biles heard gunshots of unknown origin. Additionally, Officer Biles received a cautionary radio alert that the suspects may be armed. The evidence pertaining to the discharge of a firearm suggested that Officer Biles had a reasonable concern that Appellant may have had a weapon in his possession. Accordingly, the jury was warranted in finding that effectuating a weapons frisk was a legitimate duty at the time Officer Biles approached Appellant. Officer Biles stated, "[W]e were yelling at them in loud voices, 'get your hands up, let me see your hands," for our safety, [to] make sure they didn't have any weapons." The evidence therefore sufficiently established that Appellant intended to prevent Officer Biles from performing a weapons frisk by grabbing him and initiating a struggle on the ground.

Appellant seemingly ignores the disjunctive clause **discharging any other duty** of Section 5104, implicitly arguing that the **lawful arrest** clause is a necessary element of the offense. The plain reading of the statute does not support Appellant's characterization.

(**See** Trial Court Opinion, filed June 13, 2014, at 2-3) (emphasis in original) (internal footnote and citations to the record omitted). We agree with the court and emphasize that Officer Biles provided particular facts from which he reasonably inferred Appellant was armed and dangerous, thereby justifying a frisk for weapons. **See Commonwealth v. Preacher**, 827 A.2d 1235, 1239 (Pa.Super. 2003) (explaining officer can conduct pat-down of suspect's outer garments for weapons if, during course of valid investigatory stop, officer reasonably believes suspect may be armed and dangerous).

- 6 -

*See also Commonwealth v. Coleman*, 19 A.3d 1111 (Pa.Super. 2011) (holding sufficient evidence supported defendant's conviction for resisting arrest or other law enforcement where defendant struggled with officer who attempted to remove defendant's hand from pocket; officer received police radio call for armed robbery in progress, officer drove to location of robbery and observed defendant, who matched description of robber, and defendant refused to comply with officer's request that defendant remove his hand from his pocket). Consequently, sufficient evidence supported Appellant's conviction for resisting arrest or other law enforcement. *See Hansley, supra*.

In his second issue, Appellant contends the sentencing court imposed an aggravated range sentence without considering mitigating factors, specifically the fact that Appellant's criminal history included non-violent offenses. Appellant concludes the court abused its discretion by imposing an excessive sentence. Appellant's challenge is to the discretionary aspects of his sentence. *See Commonwealth v. Lutes*, 793 A.2d 949 (Pa.Super. 2002) (stating claim that sentence is manifestly excessive challenges discretionary aspects of sentencing).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Sierra*, 752 A.2d 910 (Pa.Super. 2000). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing. **Commonwealth v. Mann**, 820 A.2d 788 (Pa.Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).[3]

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. **Commonwealth v. Mouzon**, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal 'furthers the purpose evident in

---

[3] In his statement of issues presented, Appellant mentions that the sentence imposed by the court "seemingly intended to punish [Appellant] for exercising his right to a jury trial[.]" (Appellant's Brief at 4). Appellant, however, failed to preserve this claim in his post-sentence motion. **See Mann, supra**.

the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases.'" **Commonwealth v. Phillips**, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009) (quoting **Commonwealth v. Williams**, 562 A.2d 1385, 1387 (Pa.Super. 1989) (*en banc*) (emphasis in original)).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Anderson**, 830 A.2d 1013 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Sierra, supra** at 912-13. "A substantial question is raised where an appellant alleges the sentencing court erred by imposing an aggravated range sentence without consideration of mitigating circumstances." **Commonwealth v. Hyland**, 875 A.2d 1175, 1183 (Pa.Super. 2005), *appeal denied*, 586 Pa. 723, 890 A.2d 1057 (2005).

Instantly, Appellant properly preserved his claim regarding the court's purported error in imposing an aggravated range sentence without consideration of mitigating circumstances. As presented, Appellant's claim appears to raise a substantial question as to the discretionary aspects of his sentence. **See id.**

Our standard of review concerning the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Id.* at 1184 (quoting *Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa.Super. 1999) (*en banc*)).

"[A] court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa.Super. 2002), *cert. denied*, 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id.*

Instantly, the record belies Appellant's contention that the court failed to consider the mitigating factors at issue. Immediately following the announcement of the jury's verdict, Appellant waived his right to a pre-sentence investigation report and proceeded to sentencing. At that time, the Commonwealth emphasized Appellant's extensive criminal history:

> [THE COMMONWEALTH]: Your Honor, the Commonwealth is asking for one to two.
>
> [Appellant]—I guess I'll—since we don't have a pre-

sentence report, I'll just inform the court—and the court can look at his record—it's extensive.

[Appellant's] been convicted of [possession of a controlled substance with intent to deliver ("PWID")] in 2000 on—one, two, three, four—four separate PWIDs that he consolidated in 2000 before Judge Wood-Skipper. He has a separate PWID before Judge Hughes in 2003. There's the case that he's on right now, which is another PWID with Judge Bronson, from 2010. Then there is—he has a juvenile record. He also has another PWID conviction in 2000 before Judge Nyfield (ph). Another PWID conviction in 2000 before Judge Gehret. He has a PWID conviction in 2007 before Judge Meehan.

THE COURT:       Are they all separate PWIDs?

[THE COMMONWEALTH]:   The 2007 before Judge Meehan is actually—

[DEFENSE COUNSEL]:    He consolidated several PWIDs.

[THE COMMONWEALTH]:   Two PWIDs and a DUI consolidated.

(*See* N.T. Trial and Sentencing, 3/11/13, at 32-33.) The Commonwealth also detailed Appellant's history while on probation, which included multiple violations.

Defense counsel, however, requested the court to impose a probationary sentence. The court asked defense counsel, "Who gets probation when you've been convicted ten times or more?" (*Id.* at 36). Defense counsel conceded Appellant had a "major problem with the state parole board with this case." (*Id.*) Consequently, defense counsel revised his request, asking for "a sentence within the guideline range." (*Id.*)

- 11 -

Thereafter, the court and defense counsel discussed the applicability of various aggravating circumstances. At the conclusion of the hearing, the court imposed the sentence of one to two years' imprisonment.

Despite Appellant's protests that the court failed to appreciate the non-violent nature of his prior offenses, the court emphasized its concerns over the volume of crimes Appellant had committed. Significantly, the court considered the nature and circumstances of the offense at issue. The court also observed Appellant and considered the statements from Appellant's counsel. Under these circumstances, we see no abuse of discretion. **See Hyland, supra**. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/23/2014</u>